JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Janos Sandor, Administrator of the Estate of Xavier Mitchell-Sandor

## DEFENDANTS

United States of America, Huntington Ingalls Industries, Inc., and Huntington Ingalls Incorporated

**(b)** County of Residence of First Listed Plaintiff   Fairfield County, CT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   N/A
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

The Reardon Law Firm, P.C., 160 Hempstead Street, New London, CT 06320

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine   Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal   Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | | 26 USC 7609 | Act/Review or Appeal of |
| | Employment  **Other:** | **IMMIGRATION** | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | Other   ☐ 550 Civil Rights | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 448 Education   ☐ 555 Prison Condition | Actions | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1346

Brief description of cause:
The Plaintiff's decedent, a Seaman in the U.S. Navy, took his own life as a result of the Defendants' refusal to provide him with basic necessities.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$60,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Mar 28, 2024 | *[signature]* |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANOS SANDOR,<br>ADMINISTRATOR OF THE ESTATE<br>OF XAVIER MITCHELL-SANDOR | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| V. | )<br>) |
| UNITED STATES OF AMERICA,<br>HUNTINGTON INGALLS INDUSTRIES, INC.<br>AND HUNTINGTON INGALLS<br>INCORPORATED | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

MARCH 28, 2024

### COMPLAINT

Xavier Mitchell-Sandor, a 19-year-old Seaman in the United States Navy, took his own life on April 15, 2022 using a Navy-issued pistol as a result of the refusal of the Department of the Navy of the United States of America, Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated (through its Newport News Shipbuilding division) to provide him with basic necessities of daily living required to maintain his physical and mental health while engaged in activities that were not incident to military service. His Estate brings this Complaint against the Defendants for his wrongful death.

### PARTIES

1.      Plaintiff, Janos Sandor, is the duly appointed administrator of the Estate of his son, Xavier Mitchell-Sandor (hereinafter "Xavier"), who was a Seaman in the United States Navy.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

2.      Janos Sandor (hereinafter "Plaintiff") was appointed as Administrator of his son's Estate on August 30, 2023 by order of the Shelton Probate Court of Shelton, Connecticut.

3.      Defendant, United States of America (hereinafter "Defendant United States"), is sued under the Federal Tort Claims Act for the tortious acts of its agents and employees, as well as under the Suits in Admiralty Act.

4.      Defendants, Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated (hereinafter "HII"), are sued for negligence for their failure to provide accommodations and living necessities to Xavier.

5.      Defendants, Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated, were and are incorporated in the State of Virginia and, through their subsidiary Newport News Shipbuilding, contracted with the United States to rebuild the USS George Washington (hereinafter "GW"), an aircraft carrier.

## JURSIDICTION

6.      The District Court has jurisdiction over the Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, in which the United States authorizes claims to be brought against itself for damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of Connecticut.

7.      All conditions precedent to a Federal Tort Claims Act have been met, the Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

Claims Act and had previously, and timely, presented this matter as an administrative claim (**Exhibit A**) for payment against the Department of the Navy, the responsible federal agency, and received a denial on or about February 1, 2024 (**Exhibit B**).

8.      Jurisdiction further exists pursuant to 46 U.S.C. §§ 30901 *et seq.,* commonly known as the Suits in Admiralty Act.

9.      Jurisdiction exists as to Defendant HII under the Connecticut long-arm statute, Connecticut General Statutes § 52-59b.

## VENUE

10.     Venue is properly within the District Court for the District of Connecticut under 28 U.S.C. § 1402(b) as Xavier resided in the District of Connecticut.

11.     Further, the Estate of Xavier was opened in the State of Connecticut.

## SOVEREIGN IMMUNITY

12.     Defendant United States has waived sovereign immunity "for money damages … for injuries … or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" pursuant to 28 U.S.C. § 1346(b)(1) and pursuant to the Suits in Admiralty Act, 46 U.S.C. 741.

## FACTS COMMON TO ALL COUNTS

13.     On or about September 1, 2017, HII entered into a $2.8 billion cost-plus-incentive fee contract for the RCOH of the GW with the United States. Said contract was not competitively procured under the authority of 10 U.S. Code 2304(c). Pursuant to said contract, this RCOH was to be completed by August 2021, within 48 months.

3

14.    Said contract included terms and funding of $75 million specific to the accommodations and facilities to be made available to Naval personnel working on jobs associated with the RCOH of the GW by HII during the 48-month RCOH.

15.    On August 4, 2017, the GW was moved from Norfolk Naval Station in Norfolk, Virginia and delivered to Newport News Shipyard without a crew.  There, it was drydocked on land to undergo the RCOH pursuant to the HII contract with the United States.

16.    By the terms of the contract, HII was obligated to provide living accommodations and all related services for workers on and around the vessel as there were no adequate living quarters or food services available within the aircraft carrier because it was undergoing major reconstruction.

17.    Xavier enlisted in the Navy on August 24, 2021.

18.    After completing training and "A" school, Xavier was stationed at the GW starting in January of 2022. His job entailed providing security to the GW. He was assigned to the Charlie section and was required to stand watch between the hours of 1700 and 0500.

19.    At the time Xavier was stationed at the GW, the aircraft carrier was undergoing the RCOH.

20.    Prior to Xavier's assignment to the GW, the Commanding Officer had ordered a complete crew move-aboard, meaning Xavier was required to live on board the GW.

21.    Upon his arrival to his duty assignment, Xavier discovered there were no adequate living quarters and services provided to him by the United States and/or HII

4

and that he was required to live aboard the drydocked aircraft carrier. In addition, Xavier discovered upon arrival that he was expected by HII mandates to park his car almost a mile from the GW and travel long distances by foot to obtain food and the essentials of living.

22.    The RCOH took 69 months to complete, 21 months longer than the contractual completion date.

23.    The RCOH was required by contract to be completed five months prior to Xavier's assignment to provide security to the GW.

24.    Defendant HII had a contractual obligation to the Defendant United States to complete the RCOH and provide sailors with living accommodations during the completion of the RCOH.

25.    The GW presented a hazardous and noisy industrial environment, not suitable for living. The work required for the RCOH caused loud noises throughout the day, such as needle gunning, bells, frequent announcements and grinding.

26.    The shipyard operated 24 hours per day, seven days per week, with designated quiet hours between 2200 to 0600.

27.    While Xavier was required to stand guard during the overnight shift, the ship was quiet. However, during the hours he was off and required to rest and sleep, there was continuous noise on board. Because of this, Xavier could not sleep and became severely sleep deprived.

28.    In order to rest, Xavier slept in his car frequently because he was unable to do so on the GW.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

29.    Parking was located about a mile walk from where the GW was located, and that is where Xavier's vehicle was required to be parked.

30.    There was no suitable space to sit and rest onboard the GW.

31.    Electricity, heating, ventilation, air conditioning and hot water on the GW would routinely be shut off, meaning Xavier and others forced to live onboard were unable to live in a climate-controlled environment and had little access to warm showers.

32.    These outages could last anywhere from a few hours to two weeks at a time.

33.    Xavier and others required to reside onboard the GW would be unaware of when or where these outages were occurring and could not prepare for them.

34.    Recreational activities, such as television and internet, were not available onboard.

35.    Junior Sailors, including Xavier, were not provided a sufficient stipend to find off-ship housing.

36.    Junior Sailors, including Xavier, were unable to report complaints regarding the living conditions on the ship due to fear that they would be bullied and hazed.

37.    Xavier was bullied after his family made complaints regarding the living conditions onboard.

38.    Xavier was unable to receive mental health care because the wait time for an initial assessment was one to two months.

6

39.     The Navy stigmatized mental health care and, because of this, Sailors, including Xavier, were unable to seek mental health treater because it would affect their future career opportunities.

40.     Xavier grew increasingly depressed and suicidal due to the conditions onboard the GW, something he shared with shipmates and colleagues, as well as family and friends.

41.     Xavier committed suicide onboard the GW on April 15, 2022 using his Navy-issued pistol, citing the living conditions onboard as the reason for his suicide.

42.     Plaintiff brings this lawsuit to recover for personal injury and wrongful death damages sustained as the result of Xavier's self-inflicted gunshot wound brought about by the Defendants' failure to provide him with basic living necessities.

43.     Said incident and the death of Xavier Mitchell-Sandor were directly and proximately caused by the negligent acts of Defendants United States and HII, as well as their officers, employees, agents and/or apparent agents.

44.     The conditions that led to Xavier's suicide were present during times when Xavier was not engaged in activities that were incident to his military service but were simply activities of daily living.

## CAUSES OF ACTION

### COUNT ONE – NEGLIGENCE AGAINST DEFENDANT UNITED STATES

45.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46.     Plaintiff's injuries and Xavier's death were caused by the negligent conduct of Defendant United States.

7

47.    Defendant United States had a duty and obligation to maintain safe and habitable conditions for Xavier to live in, which they had failed to do.

48.    In particular, though not exclusively, Defendant United States was negligent for the following acts, omissions, and/or violations:

a.  Failure to provide adequate heating during times of low temperatures;

b.  Failure to provide cooling during times of high temperatures;

c.  Failure to provide hot water for hygiene;

d.  Failure to provide adequate space free from loud noises for sleeping;

e.  Failure to provide any form of recreational activities such as television, internet, cellular device services, fitness facilities, or companionship;

f.  Failure to provide adequate food and nutrition;

g.  Failure to provide adequate parking which required Xavier to walk long distances to get to and from the ship when he was forced to sleep in his vehicle;

h.  Failure to provide adequate allowance for housing;

i.  Failure to provide adequate off-base housing options;

j.  Failure to provide access to mental health treatment;

k.  Failure to adequately train employees on how to properly address concerns regarding safety of service members;

l.  Failure to encourage Xavier to relocate;

m. Failure in allowing Xavier, a new Sailor struggling to adjust to life on the ship, to isolate alone in a berthing lacking basic amenities;

n.  Failure to act when leadership learned Xavier was sleeping in his vehicle;

o.  Failure to follow up and understand the reasoning as to why Xavier was sleeping in his vehicle once leadership learned of it;

p.  Failure to provide additional assistance to Sailors who had to work the Charlie section even though they knew this was the most difficult shift;

q.  Failure by senior Sailors to notify anyone that Xavier was visibility struggling;

8

r.  Failure by Xavier's assigned mentor to provide sufficient support or notify leadership that Xavier was struggling;

s.  Failure to address and prevent teasing and bullying of Xavier;

t.  Failure in following up on the availability of mental health resources with Xavier;

u.  Failure to provide opportunities to live off-ship that did not require additional qualifications;

v.  Failure to address the fact that Xavier was falling behind on his qualification process for off-ship housing;

w.  Failure to ensure sufficient staffing for mental health treatment;

x.  Failure to ensure proper documentation of Xavier's infractions which would have assisted in identifying that he was struggling with adjusting to ship life;

y.  Failure to identify the need for Xavier to obtain counseling;

z.  Failure to provide Xavier with counseling;

aa. Failure to make Xavier aware of available additional resources;

bb. Failure by leadership to follow up with Xavier after family members notified them of safety concerns;

cc. Failure to make a proper determination whether Xavier was compatible for continued naval service;

dd. Failure to identify ways for Xavier to depart the Navy;

ee. Failure to identify Xavier's symptoms of sleep deprivation;

ff.  Failure to properly address Xavier's sleep deprivation;

gg. Failure to provide minimum mandatory counseling to new Sailors;

hh. Failure to require socialization for Junior Sailors even knowing that the transition is difficult and could cause stress;

ii.  Failure to provide training on suicide recognition and intervention, resource identification, and proper means of notifying leadership of concerns; and

jj.  Failure to follow proper policies regarding documenting Sailor infractions.

9

49.    As a result of the Defendant's negligence and carelessness, Xavier suffered extreme emotional distress, physical injuries, mental and physical pain, and his untimely death.

50.    At the time of his death, Xavier was nineteen (19) years old and in otherwise good health. His death destroyed his ability to carry out life's activities, including the ability to earn income and enjoy his family and friends, resulting in substantial loss and damage to his Estate.

51.    As a result of his death, Xavier Mitchel-Sandor's Estate incurred expenses for funeral and related costs.

## COUNT TWO – FEDERAL TORT CLAIMS ACT CLAIM AGAINST DEFENDANT UNITED STATES

52.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53.    Pursuant to 28 U.S.C. § 2671, Defendant United States is liable to Plaintiff for the negligent acts and/or omissions committed by its employees, agents, apparent agents and/or servants during the course of their employ, agency, apparent agency and/or servitude with said Defendant.

54.    Specifically, Defendant United States' negligent acts and/or omissions include, but are not necessarily limited to, the following:

   a.  Failure to provide adequate heating during times of low temperatures;

   b.  Failure to provide cooling during times of high temperatures;

   c.  Failure to provide hot water for hygiene;

   d.  Failure to provide adequate space free from loud noises for sleeping;

   e.  Failure to provide any form of recreational activities such as television, internet, cellular device services, fitness facilities, or companionship;

10

f.  Failure to provide adequate food and nutrition;

g.  Failure to provide adequate parking which required Xavier to walk long distances to get to and from the ship when he was forced to sleep in his vehicle;

h.  Failure to provide adequate allowance for housing;

i.  Failure to provide adequate off-base housing options;

j.  Failure to provide access to mental health treatment;

k.  Failure to adequately train employees on how to properly address concerns regarding safety of service members;

l.  Failure to encourage Xavier to relocate;

m. Failure in allowing Xavier, a new Sailor struggling to adjust to life on the ship, to isolate alone in a berthing lacking basic amenities;

n.  Failure to act when leadership learned Xavier was sleeping in his vehicle;

o.  Failure to follow up and understand the reasoning as to why Xavier was sleeping in his vehicle once leadership learned of it;

p.  Failure to provide additional assistance to Sailors who had to work the Charlie section even though they knew this was the most difficult shift;

q.  Failure by senior Sailors to notify anyone that Xavier was visibility struggling;

r.  Failure by Xavier's assigned mentor to provide sufficient support or notify leadership that Xavier was struggling;

s.  Failure to address and prevent teasing and bullying of Xavier;

t.  Failure in following up on the availability of mental health resources with Xavier;

u.  Failure to provide opportunities to live off-ship that did not require additional qualifications;

v.  Failure to address the fact that Xavier was falling behind on his qualification process for off-ship housing;

w. Failure to ensure sufficient staffing for mental health treatment;

11

x. Failure to ensure proper documentation of Xavier's infractions which would have assisted in identifying that he was struggling with adjusting to ship life;

y. Failure to identify the need for Xavier to obtain counseling;

z. Failure to provide Xavier with counseling;

aa. Failure to make Xavier aware of available additional resources;

bb. Failure by leadership to follow up with Xavier after family members notified them of safety concerns;

cc. Failure to make a proper determination whether Xavier was compatible for continued naval service;

dd. Failure to identify ways for Xavier to depart the Navy;

ee. Failure to identify Xavier's symptoms of sleep deprivation;

ff. Failure to properly address Xavier's sleep deprivation;

gg. Failure to provide minimum mandatory counseling to new Sailors;

hh. Failure to require socialization for Junior Sailors even knowing that the transition is difficult and could cause stress;

ii. Failure to provide training on suicide recognition and intervention, resource identification, and proper means of notifying leadership of concerns; and

jj. Failure to follow proper policies regarding documenting Sailor infractions.

55. As a result of the Defendant's negligence and carelessness, Xavier suffered extreme emotional distress, physical injuries, mental and physical pain, and his untimely death.

56. At the time of his death, Xavier was nineteen (19) years old and in otherwise good health. His death destroyed his ability to carry out life's activities, including the ability to earn income and enjoy his family and friends, resulting in substantial loss and damage to his Estate.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

57.    As a result of his death, Xavier Mitchel-Sandor's Estate incurred expenses for funeral and related costs.

## COUNT THREE – SUITS IN ADMIRALTY ACT CLAIM AGAINST DEFENDANT UNITED STATES

58.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.    Pursuant to 46 U.S.C. §§ 30901 *et seq.,* also known as the Suits in Admiralty Act, Defendant United States is liable to Plaintiff for maritime torts committed by agents or employees of the Navy.

60.    Specifically, Defendant United States' negligent acts and/or omissions include, but are not necessarily limited to, the following:

a.  Failure to provide adequate heating during times of low temperatures;

b.  Failure to provide cooling during times of high temperatures;

c.  Failure to provide hot water for hygiene;

d.  Failure to provide adequate space free from loud noises for sleeping;

e.  Failure to provide any form of recreational activities such as television, internet, cellular device services, fitness facilities, or companionship;

f.  Failure to provide adequate food and nutrition;

g.  Failure to provide adequate parking which required Xavier to walk long distances to get to and from the ship when he was forced to sleep in his vehicle;

h.  Failure to provide adequate allowance for housing;

i.  Failure to provide adequate off-base housing options;

j.  Failure to provide access to mental health treatment;

k.  Failure to adequately train employees on how to properly address concerns regarding safety of service members;

l.  Failure to encourage Xavier to relocate;

13

m. Failure in allowing Xavier, a new Sailor struggling to adjust to life on the ship, to isolate alone in a berthing lacking basic amenities;

n. Failure to act when leadership learned Xavier was sleeping in his vehicle;

o. Failure to follow up and understand the reasoning as to why Xavier was sleeping in his vehicle once leadership learned of it;

p. Failure to provide additional assistance to Sailors who had to work the Charlie section even though they knew this was the most difficult shift;

q. Failure by senior Sailors to notify anyone that Xavier was visibility struggling;

r. Failure by Xavier's assigned mentor to provide sufficient support or notify leadership that Xavier was struggling;

s. Failure to address and prevent teasing and bullying of Xavier;

t. Failure in following up on the availability of mental health resources with Xavier;

u. Failure to provide opportunities to live off-ship that did not require additional qualifications;

v. Failure to address the fact that Xavier was falling behind on his qualification process for off-ship housing;

w. Failure to ensure sufficient staffing for mental health treatment;

x. Failure to ensure proper documentation of Xavier's infractions which would have assisted in identifying that he was struggling with adjusting to ship life;

y. Failure to identify the need for Xavier to obtain counseling;

z. Failure to provide Xavier with counseling;

aa. Failure to make Xavier aware of available additional resources;

bb. Failure by leadership to follow up with Xavier after family members notified them of safety concerns;

cc. Failure to make a proper determination whether Xavier was compatible for continued naval service;

dd. Failure to identify ways for Xavier to depart the Navy;

ee. Failure to identify Xavier's symptoms of sleep deprivation;

14

ff.  Failure to properly address Xavier's sleep deprivation;

gg. Failure to provide minimum mandatory counseling to new Sailors;

hh. Failure to require socialization for Junior Sailors even knowing that the transition is difficult and could cause stress;

ii.  Failure to provide training on suicide recognition and intervention, resource identification, and proper means of notifying leadership of concerns; and

jj.  Failure to follow proper policies regarding documenting Sailor infractions.

61.    As a result of the Defendant's negligence and carelessness, Xavier suffered extreme emotional distress, physical injuries, mental and physical pain, and his untimely death.

62.    At the time of his death, Xavier was nineteen (19) years old and in otherwise good health. His death destroyed his ability to carry out life's activities, including the ability to earn income and enjoy his family and friends, resulting in substantial loss and damage to his Estate.

63.    As a result of his death, Xavier Mitchel-Sandor's Estate incurred expenses for funeral and related costs.

## COUNT FOUR – NEGLIGENCE AGAINST HUNTINGTON INGALLS INDUSTRIES, INC. AND HUNTINGTON INGALLS INCORPORATED

64.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65.    As a result of the failure of HII to provide essentials of living including accommodations and housing to Xavier and other junior Naval personnel similarly situated, over the period of January 27, 2022 until his death on April 15, 2022, Xavier experienced extreme hardship, mental and physical exhaustion and depression and hopelessness as these living conditions worsened through the winter months. During

15

this time, Xavier's mental and physical health deteriorated until he took his own life in a state of complete despair due to the deplorable conditions inflicted upon him and other junior Naval personnel by the Defendant HII at the shipyard.

66.    The death of Xavier was proximately caused by the failure of HII to provide to junior Naval personnel, including Xavier, with safe, habitable living conditions in violation of its obligation to those Seamen, who were required by their work to live at the Shipyard, in one or more of the following ways:

   a.  Failure to provide essential living necessities;

   b.  Failure to provide adequate parking facilities for Navy personnel in reasonable proximity to the drydocked GW, including Xavier;

   c.  Failure to provide safe, habitable housing with sufficient heat, hot water, and power at the Shipyard for Xavier and other Naval security personnel, resulting in deterioration of Xavier's mental and physical health and wellbeing;

   d.  Failure to provide adequate sleeping quarters for Xavier and other naval security personnel during his off-duty hours in a facility away from the construction site and instead required him to endure constant loud construction noise, resulting in sleep deprivation and deterioration of his mental and physical health and wellbeing;

   e.  Failure to provide accommodations at the HII/Shipyard facilities with civilian clinical mental health counselors and Deployed Resiliency Counselors ("DRCs") thereby requiring Xavier and other Naval security personnel to travel more than three miles from the shipyard to obtain mental health services;

   f.  Shifted necessary funding and services for basic living needs of Naval personnel that had previously been available to the GW RCOH to other contracts, including the USS John Stennis RCOH contract, resulting in a further deprivation of their basic living needs;

   g.  Allowed cost overages and delays in completing the GW RCOH contract obligations resulting in withdrawal or reduction of basic living needs available to sailors, including Xavier, in violation of its contractual obligation to those sailors;

   h.  Failure to provide busing, transportation to parking lots, internet access, and recreational areas for Naval personnel, including Xavier, thereby

16

requiring them to walk long distances to reach limited and inadequate facilities;

i.  Failure to provide adequate food and nutrition;

j.  Failure to provide hot water for hygiene;

k.  Failure to provide cooling during times of high temperatures;

l.  Failure to provide adequate heating during times of low temperature;

m.  Failure to provide permanently embedded mental health; and

n.  Failure to provide Shipyard Naval personnel, including Xavier, a 24-hour 7-day a week main market available in close proximity to adequate, suitable living quarters so that healthy foods would be available to them during their off-duty hours.

67.    As a result of the motivation of HII to place profits over safety, the living conditions at the Shipyard deteriorated. This was because additional RCOH contracts for other aircraft carriers were undertaken by HII even though they had failed to timely complete the GW RCOH contract, which was nearly two years beyond its contractual completion date. This conduct caused Xavier and other sailors to suffer further denial and deprivation of their essential living needs.

68.    Upon investigation of Xavier's tragic death, Vice Admiral Kenneth Whitesell, Naval Air Forces Commander, blamed HII and its Newport News Shipbuilding division for shifting resources from the GW overhaul to new construction of other carriers and submarines.

69.    As a result of the conduct of the Defendants HII, Xavier experienced a downward spiral of his mental wellbeing into a state of severe depression and hopelessness. His condition worsened when two other sailors assigned to his unit at the GW, who experienced similar conditions, took their own lives. Xavier used his service revolver to rake his own life on April 15, 2022.

17

70.     As a result of the Defendants' conduct, Xavier suffered extreme emotional distress, physical injuries, mental and physical pain, and his untimely death.

71.     At the time of his death, Xavier was nineteen (19) years old and in otherwise good health. His death destroyed his ability to carry out life's activities, including the ability to earn income and enjoy his family and friends, resulting in substantial loss and damage to his Estate.

72.     As a result of his death, Xavier Mitchel-Sandor's Estate incurred expenses for funeral and related costs.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands judgment as to the Defendants as follows:

1.      Compensatory damages in the amount of $60,000,000;

2.      Pre-judgment and post-judgment interest; and

3.      All other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff asserts their right under the Seventh Amendment to the U.S.

Constitution and demands in accordance with the Federal Rules of Civil Procedure § 38

a trial by jury on all issues.

THE PLAINTIFF,

BY: _____

Kelly E. Reardon, Esq. (ct28441)
Robert I. Reardon, Esq. (ct05358)
**THE REARDON LAW FIRM, P.C.**
160 Hempstead St
PO Drawer 1430
New London, CT 06320
Email: kreardon@reardonlaw.com
Email: rreardon@reardonlaw.com

19